# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANGIE M. PARKHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-09-242-FHS-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Angie Marie Parkhill requests review of the Commissioner of the Social Security Administration's denial of benefits pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 1, 1969, and was thirty-nine years old at the time of the administrative hearing. She has a high school education, completed two years of vocational training in business technology (Tr. 21), and has worked as a clerical office manager, billing clerk, medical coder and medical records clerk (Tr. 39). The claimant alleges inability to work since September 12, 2005 due to a damaged lumbar spine, numbness in the left leg, left sacroiliac joint syndrome, gluteus medius bursitis, piriformis syndrome, sciatica of the left lower extremity, severe chronic pain and anxiety (Tr. 126).

## Procedural History

On March 7, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated January 14, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the ability to perform sedentary work, *i. e.*, she could lift/carry up to 10

pounds, stand/walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 55). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a billing clerk and a medical coder (Tr. 61).

**Review**

The claimant contends that the ALJ erred by failing to find that her borderline personality disorder was a severe impairment. Because the undersigned Magistrate Judge finds that the ALJ failed to properly analyze the medical evidence of the claimant's mental impairment, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ.

The claimant's relevant injuries arise from a fall down a staircase while on the job (Tr. 185). While pursuing her worker's compensation claim, the claimant was referred to psychologist Dr. David E. Johnsen, Ph.D. for an assessment of the "presence and extent of any psychological overlay stemming from her . . . work-related accident" (Tr. 471).

Dr. Johnsen evaluated claimant on June 12, 2008. He performed a number of tests including, *inter alia*, the Center for Epidemiological Studies Depression Scale and the Millon Clinical Multiaxial Inventory-III (MCMI-III), the answers to which placed her in a "range indicative of very severe depression" (Tr. 472-3). Dr. Johnsen noted that the claimant reported pain causing "complete interference with all day-to-day functioning, level of satisfaction with life activities, ability to participate in recreational and social activities, [and] interpersonal relationships," that she felt she had little to no control over

her life and ability to deal with stress, and that she attempted suicide in the summer of 2007 by taking Tylenol PM and some other unidentified substance (Tr. 473). On the MCMI-III, the claimant's profile "revealed the presence of severe depression and anxiety" and that her "personality scale profile revealed evidence of a longstanding borderline personality disorder" marked by "extreme and dramatic mood swings" (Tr. 473). Dr. Johnsen opined that the claimant "is suffering from fairly intense psychiatric difficulties stemming primarily from her longstanding borderline personality disorder" and that her workplace injury had exacerbated her psychiatric difficulties (Tr. 473).

The claimant visited Dr. Johnsen only one other time, presenting on June 16, 2008 "feeling very depressed" but not suicidal (Tr. 475). Dr. Johnsen observed then that "she seems to alternate between feelings of depression and anger, and often does not want to be around other people" (Tr. 475). The claimant scheduled subsequent appointments, but each time cancelled due to the inability to buy gas for the trip (Tr. 475-76).

The ALJ determined that the claimant had severe physical impairments, *e. g.*, mild degenerative changes in the lumbar spine and sciatic nerve contusion, but he concluded that the claimant's borderline personality disorder was a non-severe impairment because it did "not cause more minimal limitation in the claimant's ability to perform basic mental work activities" (Tr. 53). He analyzed the claimant's mental impairment in accordance with the "special review technique" outlined in 20 C.F.R. §§ 404.1520a, 416.920a and found that the claimant was only mildly limited in her activities of daily living and social functioning, that she was not limited in the area of concentration,

persistence or pace, and that she had suffered no episodes of decompensation (Tr. 15). *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ did not discuss any of the medical evidence provided by Dr. Johnsen (or much of any other evidence in particular) during his analysis at step two, but he did discuss it briefly at step four in assessing the claimant's RFC. The ALJ concluded at that point that "the claimant's mental impairment was [not] of a severe or debilitating nature," reasoning that if her impairment had been severe, Dr. Johnsen "would have instructed her to try to obtain treatment at a location closer to her home" and her worker's comp counsel "would have given aide [sic] in obtaining a closer location for her treatment" when the claimant could not afford the gas to visit Dr. Johnsen (Tr. 56).

This remarkable analysis of the claimant's mental impairment was patently flawed for several reasons. First, the fact that the claimant did not receive ongoing psychological or psychiatric treatment would not in and of itself provide support for a finding that her mental impairment was not severe, *see*, *e. g.*, *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from such a specialist before an ALJ can find that she has a severe

mental impairment."), but the claimant *did attend* the counseling sessions recommended by Dr. Johnsen in any event (Tr. 307).

Second, in determining that Dr. Johnsen did not really "mean what he said" about the severity of the claimant's mental limitations because he did not instruct claimant to obtain treatment closer to home, the ALJ impermissibly substituted his own medical conclusion for that of Dr. Johnsen. *See, e. g., Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993); *Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician[.]").

Third, the ALJ discussed only those elements of Dr. Johnsen's findings (or "non-elements" in the case of the missing advice to seek treatment closer to home) that were supportive of his conclusion that the claimant's mental impairment was not severe. The ALJ wholly ignored any elements of Dr. Johnsen's findings that were unsupportive of the non-severity finding, *e. g.*, Dr. Johnsen's conclusion that the claimant was "suffering from fairly intense psychiatric difficulties" and thus needed "fairly intensive treatment" (Tr. 473), and the results of the psychological assessment tools Dr. Johnsen administered to the claimant (Tr. 472-3). It was error for the ALJ to "pick and choose" from Dr. Johnsen's findings in such fashion. *See*, *e. g.*, *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting the ALJ may not "pick and choose among medical reports, using

portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Finally, even if the ALJ properly concluded that the claimant's mental impairment was not severe at step two, he was nevertheless required to consider any work limitations the impairment might cause in formulating the claimant's RFC at step four, because the claimant did suffer from other severe impairments, *e. g.*, mild degenerative changes in the lumbar spine and sciatic nerve contusion (Tr. 53). *See, e. g., Hill v. Astrue,* 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean that the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"). The ALJ wholly failed to perform such analysis.

Because the ALJ failed to properly analyze the evidence of the claimant's mental impairment, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any modifications to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.  The undersigned Magistrate Judge accordingly hereby RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b)(2).

**DATED** this 15th day of September, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**